United States District Court
Southern District of Texas
**ENTERED**
January 03, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMDL COLLECTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-23-4146 |
| | § | |
| COAST TO COAST BUSINESS MANAGEMENT, INC., d/b/a TEXAS TOY DISTRIBUTION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Both parties in this copyright infringement suit make plush animals in China and import them into this country. The plaintiff, AMDL, alleges infringement as to four plush toys: a bearded dragon named "Pogo"; a bee named "Buzzy"; a Mosasaurus named "Moby"; and a gecko lizard named "Leo." The defendant, Texas Toy Distribution, makes the allegedly infringing plush toys. The TTD toys at issue are as follows: a bearded dragon; a bee; a mosasaurus; and a Gila monster. The parties have submitted samples of each product to enable the court to do the required side-by-side comparison to decide whether the AMDL's products are substantially similar to TTD's. TTD has moved to dismiss and for summary judgment on infringement and filed a separate motion for summary judgment on misappropriation. (Docket Entry Nos. 29, 31, 36). AMDL has responded and cross-moved for summary judgment. (Docket Entry No. 37, 38).

The issues are whether AMDL's stuffed toys feature any protected elements and whether, in a side-by side-comparison, a reasonable person would find any or all the four toys "substantially similar."

"Not all copying is legally actionable." *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001). "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (internal quotations omitted). To the extent that a copyrighted work contains unprotectable elements, a court filters out these elements from its analysis to determine whether the defendant infringed the protectable elements of the work. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533-34 (5th Cir. 1994). If the confusion between two copyrighted works would stem *only* from a comparison of the two works in their entirety, including unprotectable elements, there is no infringement. *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527 (5th Cir. 2015).

"A determination that no substantial similarity exists as a matter of law is 'appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression.'" *Rucker v. Harlequin Enters., Ltd.*, 2013 U.S. Dist. LEXIS 26299, at *12 (S.D. Tex. Feb. 26, 2023) (quoting *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004)); *see also*, *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 282 (S.D.N.Y. 2011) ("[N]oninfringement may be decided as a matter of law either when the similarity concerns only noncopyrightable elements of plaintiff's work, or when no reasonable trier of fact could find the works substantially similar.").

Images of AMDL's toys and the allegedly infringing toys created by TTD are set out below.

I.  **Pogo v. Bearded Dragon 24**

AMDL designed and in 2017 began to sell a plush bearded dragon, Pogo. (Docket Entry No. 1 at ¶¶ 12-13).



In 2022, TTD began to sell a plush bearded dragon toy that it refers to as "Bearded Dragon 24 Plush Toy." (*Id.* at ¶ 35). AMDL alleges that this toy infringes on the design of "Pogo." (*Id.*)



In 2015, AMDL designed a bee plush toy named "Buzzy the Honey Bee." (*Id.* at ¶¶ 17-18). AMDL began selling Buzzy in 2016. (*Id.* at ¶ 17).

3



In 2022, TTD began selling a bee plush toy, which it refers to as "Bee 14" Plush Stuffed Animal." (*Id*. at ¶ 41). AMDL alleges that this toy infringes the design of its "Buzzy the Honey Bee." (*Id.*). TTD points out that its "Bee 14" is a rendition of a honeybee, while AMDL's "Buzzy" is a bumblebee.



In 2018, AMDL designed a dinosaur plush toy named "Moby the Mosasaurus Dinosaur." (*Id.* at ¶ 23). AMDL began selling Moby in 2019. (*Id.* at ¶ 22).



In 2022, TTD began selling a toy that it referred to as "Mosasaur 19.7" Dinosaur Plush Stuffed Animal." (*Id.* at ¶ 47). AMDL alleges this TTD toy infringes the AMDL Moby. (*Id.*).



In 2018, AMDL designed a gecko lizard plush toy named "Leo the Leopard Gecko." (*Id.* at ¶¶ 27-28). AMDL began selling Leo in 2019. (*Id.* at ¶ 27).



In 2022, TTD began selling a "Gila Monster 24.5" Plush Stuffed Animal." (*Id.* at ¶ 53). AMDL alleges that this toy infringes its Leo gecko lizard plush toy.



## I. The Threshold Issues

TTD has moved to strike the declaration of Dafne Le, the president of AMDL Collections, Inc. The motion is granted in part and denied in part. (Docket Entry No. 40). Ms. Le's declaration does not state the basis for the personal knowledge she asserts about many of the details she asserts about TTD. (Docket Entry No. 37-1). She states generally that she is "familiar with AMDL's positions in this matter and its claims against" TTD. (Docket Entry No. 37-1). The court does not strike the portions of the declaration that describe what AMDL has done. The court does strike the portions of the declaration that describe TTD's actions. Paragraphs 13, 14, 16, and 18 are stricken. (*Id.*). Paragraph 21 is stricken as irrelevant. (*Id.*).

## II. The Legal Standards

### A. The Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

B. **The Motion for Summary Judgment**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).   The moving party "always bears the initial responsibility of

7

informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### C. Infringement

A plaintiff seeking to establish a claim for copyright infringement must show: "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Johnston v.*

8

*Kroeger*, 2024 WL 668474, at *1 (5th Cir. Feb. 19, 2024) (citing *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam)). A plaintiff may show factual copying with direct or circumstantial evidence. *Armour*, 512 F.3d at 152. In the absence of direct evidence of copying, the court can infer factual copying from "either a combination of access and probative similarity or, absent proof of access, striking similarity." *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020). While often conflated, "the requirement to show 'probative similarity' to support an inference of copying is distinct from the finding of 'substantial similarity' required for a finding of infringement." *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at *8 (N.D. Tex. June 28, 2007). "While the question of substantial similarity 'typically should be left to the factfinder, summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity.'" *Nola Spice Designs*, 783 F.3d at 550 (quoting *Peel,* 238 F.3d at 395).

### III.  Analysis

#### A.  The Motions for Summary Judgment and to Dismiss

The case law permits the court to rule on infringement claims on a motion to dismiss or for summary judgment. *Stragent, LLC v. BMW of N. Am., LLC*, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ("The elements of direct infringement are the same whether evaluated in the context of a motion for summary judgment under Rule 56 or a motion to dismiss under Rule 12(b)(6)."). Because both a motion to dismiss and a motion for summary judgment require a side-by-side comparison, the analysis is similar. Accordingly, TTD's motion to dismiss AMDL's Amended Complaint, (Docket Entry No. 29), is moot. TTD's Motion to Compel Discovery, (Docket Entry No. 30), is also moot.

### B. Infringement

The parties agree that AMDL has valid copyright protection for the four plush toy products described in its amended complaint. TTD also does not dispute the element of access to AMDL's products. AMDL argues strenuously that infringement is proven, or at least heavily supported, by the undisputed fact that TTD's products "were designed with input and direction from [TTD] to the Chinese manufacturer whom [it] utilizes, Star Arts" (Docket Entry No. 31-1) – a company that AMDL had previously worked with and that had access to AMDL's designs. (Docket Entry No. 37). This is enough to infer access. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981) (finding sufficient proof of access from evidence that the defendant "did business with the same Korean stuffed animal manufacturers employed by [the plaintiff] to make [its] stuffed animals.").

But access alone is insufficient to prove infringement. Circumstantial evidence of actual copying requires a finding of probative similarity. "[A] jury may find that two works are probatively similar if it finds any similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the plaintiff's work." *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 370 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, (2010).

The parties vigorously dispute whether AMDL can prove that TTD's challenged products are substantially similar to AMDL's four products. The parties have not submitted expert testimony, for a good reason. The issue is whether an ordinary observer would find substantial similarity between two products. A side-by-side comparison for each of the allegedly infringing products is set out below.

### a.  AMDL's Pogo and TTD's Bearded Dragon

Bearded dragons exist in nature. Any elements of the two toys depicting bearded dragons that are commonplace or dictated by the idea of the animal in nature are not copyrightable. *George S. Chen Corp. v. Cadona Int'l, Inc.*, 266 Fed. Appx. 523 (9th Cir. 2008). A plaintiff alleging infringement of stuffed animals "cannot prevent its competitors from manufacturing and selling squeezable horse toys that look like horses, squeezable shark toys that look like sharks, and squeezable bull toys that look like bulls." *Alpi Int'l, Ltd v. Anga Supply, LLC*, 2015 WL 2170040, at *4 (N.D. Cal. May 8, 2015). By contrast, stitching patterns, color combinations, posture, and size choices that demonstrate creativity may be protected elements. *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 69 (1st Cir. 2009).

AMDL cites the design of Pogo's mouth; chin; the placement of the spikes on its head, alongside the body, and under the chin; and the shape of the feet as specific protected elements. But the only protected aspects of AMDL's Pogo that the court can identify are the design and placement of the white felt spikes along the body. TTD's bearded dragon has the same pattern and placement of white felt spikes. A comparison of the remaining elements shows some differences. For example, Pogo has a smooth back, legs, and underside, while the TTD bearded dragon's back, legs, and underside are covered in scales. Pogo's feet are more splayed than those of the TTD dragon. Overall, TTD's bearded dragon appears to be a slightly more realistic depiction of the animal, while Pogo is more simplified and cartoonish. The TTD bearded dragon and the AMDL Pogo share only one aspect of a protected element – the similarly placed pattern of white felt spikes. But "the substantial similarity determination requires comparison not only of the two works' individual elements in isolation, but also of their overall look and feel." *Interplan Architect, Inc. v. C.L. Thomas, Inc.*, 2009 WL 6443117, at *6 (S.D. Tex. Nov. 13, 2009).

"Considering the works as a whole is particularly important because protectible expression may arise through the ways in which artists combine even unprotectible elements." *Sturdza v. U.A.E.*, 281 F.3d 1287, 1296 (D.C. Cir. 2002). Because of this, "the question of substantial similarity, or any other appropriate standard, should be left to the factfinder." *Cat & Dogma, LLC v. Target Corp.*, 2021 WL 4726593, at *4 (5th Cir. Oct. 8, 2021). Viewing the toys as a whole, a "reasonable jury could find the designs to be substantially similar based solely upon the similarity of the selection and arrangement of the underlying elements." *Id.*

### b. AMDL's Buzzy and TTD's Bee

"Stuffed toys depicting commonplace animals," such as bees, "are on the lower end of the spectrum of creativity since animals of one species tend to look alike." *ALPI Int'l, Ltd. v. Ad-Line Indus., Inc.*, 2012 WL 6554416, at *2. (N.D. Cal. Dec. 14, 2012). AMDL claims that the protected elements of Buzzy include its drooping belly and segmented legs. AMDL does not dispute the differences in the shapes, colors, and details between the Buzzy and the TTD bees. But an ordinary observer would not find a substantial similarity between the two stuffed bees. The fact that they are both bees is not enough for an infringement claim. Buzzy, a bumble bee, has a round body, short legs, bright yellow torso, and thick black stripes. TTD's honeybee has an angular body, long legs, brown torso, and thin dark-brown stripes. The two bees are readily distinguishable by a common observer and are not substantially similar. They do not infringe, as a matter of law.

### c. AMDL's Moby and TTD's Mosasaur

The mosasaur is extinct. The fact that both AMDL and TTD make a stuffed mosasaur does not establish substantial similarity between the two versions. *Satava*, 323 F.3d at 813. AMDL claims that its stuffed version of this extinct creature has as protected elements the placement, shape, and location of the spikes along the body; the length and scythe-like curvature of the tail;

12

the size of the fins as compared to the body; the red open mouth with oversized triangular teeth; the distinctive stitching on its head; and the deep-set eyes. TTD responds that the scythe-like shape of the tail, which it also uses in its mosasaur, is not a protected element because recognized paleontological sources frequently depict the mosasaur as it existed in nature as having a scythe-like tail. *See Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from such [toys."]).

     A Google search reveals that mosasaurs are often shown with open mouths filled with sharp, triangular teeth, making these elements unprotected. *Id.* The pattern and placement of the felt spikes are protected elements, but they have aspects that prevent them from being substantially similar. The felt spikes on the TTD mosasaur are dark blue and blunt at the top. The felt spikes on the AMDL mosasaur are gray and pointed in shape. Aside from this element, there are a number of differences between the two versions. TTD's mosasaur is smaller, with a dark blue scaled pattern on the back, a white and blue more pronounced scaled pattern on the bottom, and blue and yellow and green on the tail; AMDL's version is a mottled gray and white with a textured scale pattern all over the body. TTD's mosasaur has a friendly face with open golden eye button eyes; AMDL's mosasaur has a pointed, menacing face with blue button eyes shrouded under a long eyelid. TTD's mosasaur has various shades of blue scales on the body and a multi-colored tail; Moby's body features gray and white contrast coloring, with no scales. Even though the felt spikes are similar, the spikes are "both qualitatively and quantitatively insignificant in relation" to the toys as a whole, which "is dominated by unprotectible elements." *Nola Spice Designs, L.L.C.*, 783 F.3d at 552. Despite the similarity of the spikes, the two toy designs are not substantially similar as a whole, as is necessary for a finding of copyright infringement.

### d. Leo, the AMDL Gecko, and the TTD Gila Monster

Leopard geckos and Gila monsters exist in nature and are dissimilar in appearance and habits. The leopard gecko is a camouflaged small creature that is not known for aggressive behavior; indeed, it is often kept as a pet. The Gila monster is a large, heavy-bodied, venomous, and predatory lizard that eats small mammals. Gila monsters have black bodies covered in bead-like scales with bright spots, bands, or blotches covering their head, back, and tail. Geckos have small scales that are skin-like in texture. Two creatures could not look much more different in nature. And yet AMDL claims that Leo, its Gila monster, has protected elements are infringed by TTD's Gila Monster.

One of those allegedly infringing elements is the splayed feet. Leopard geckos in nature have splayed "grippy" feet with five toes that allows them to scale vertical surfaces with ease. A Gila monster has wide feet with five toes tipped with short, curved claws. None of these details appear in the versions of the stuffed animals both parties make. Both versions have five toes of similar appearance. As to the other elements, a side-by-side comparison tracks the differences in the actual creatures. AMDL's Leo has the smooth yellow dorsal body with black markings, the white ventral body, and the banded tail found in Leopard geckos in nature. TTD's Gila monster has the bright orange and black skin of the animal with a print made to resemble the warty bulbs covering its body. The side-by-side comparison does not show a substantial similarity that would amount to infringement.

### IV. Unfair Competition by Misappropriation

A plaintiff seeking to show misappropriation under Texas common law must demonstrate: (i) the creation of the product through extensive time, labor, skill, and money; (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that

competition, a "free ride," because the defendant is burdened with little or none of the expense incurred by the plaintiff; and (iii) damage to the plaintiff. *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 773 (5th Cir. 2017). The United States Copyright Act, 17 U.S.C. § 101, preempts state-law claims which fall within the scope of federal copyright law. To determine preemption, courts within the Fifth Circuit must first ask whether the intellectual property at issue is within the subject matter of copyright. *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652 (5th Cir. 2017) (*citing Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999)). If it is, a state-law claim is preempted if it protects rights in the intellectual property that are equivalent to any of the rights exclusively within the scope of copyright. *Id.* In evaluating whether claim for misappropriation by unfair competition is preempted by federal copyright law, "[t]he subject matter inquiry requires us to determine what intellectual property [the plaintiff] is seeking to protect." *Ultraflo*, 845 F.3d at 656.

AMDL describes the subject matter of its unfair competition claim as "stuffed animals" or in the alternative, "plush toys." (Docket Entry No. 42, at 14). AMDL argues that "in the unlikely event that the [c]ourt finds that AMDL's plush toys are not copyrightable subject matter, AMDL should be permitted to pursue remedies in the alternative relating to TTD's misappropriation of the extensive time, labor, and expense involved in developing the designs for its plush toys." (*Id.*). Stuffed animals are copyrightable. *Kamar Intern., Inc. v. Russ Berrie and Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981). The first requirement for preemption is met.

AMDL's unfair competition by misappropriation claim is preempted if it protects rights in the AMDL's stuffed animals that are equivalent to any of the exclusive rights within the general scope of copyright. Circuit precedent has established that the Texas "unfair-competition-by-misappropriation" tort does not afford plaintiffs protection that is "qualitatively different from

15

federal copyright law." *Erosion Prevention Prod. LLC v. Pave/lock/plus II, LLC*, 2023 WL 9105685, at *3 (S.D. Tex. Nov. 22, 2023) (citing *Alcatel*, 166 F. 3d at 787). And AMDL does not clearly articulate how a state-law claim would protect different rights than those it argues are covered by the Copyright Act. AMDL's unfair competition claim is preempted.

V.      **Conclusion**

The court finds that, as a matter of law, there is no infringement of AMDL's Buzzy plush toy by TTD's honeybee plush toy. The court also finds that there is no infringement of AMDL's Leo Gecko plush toy and TTD's Gila monster plush toy. For that reason, the court grants TTD's motion for summary judgment of noninfringement and denies AMDL's motion for summary judgment of infringement as to those two toys.

The court finds that the placement and design of the white felt spikes on TTD's Bearded Dragon and on TTD's mosasaurus plush toys are protectable elements that make the felt spikes on AMDL's Pogo and Moby the Mosasaurus infringing. A side-by-side comparison of AMDL's and TTD's bearded dragon plush toys show that a reasonable jury could find that that these toys were substantially similar. But a side-by-side comparison of the mosasaurus toys shows no substantial similarly between those products. For that reason, the court denies both AMDL's and TTD's motions for summary judgment as to the bearded dragon plush toys. The court grants TTD's motion for summary judgment of noninfringement and denies AMDL's motion for summary judgment of infringement as to the mosasaurus toys.

The motion to strike the declaration of Dafne Le is granted in part and denied in part. (Docket Entry No. 40). The motion to dismiss AMDL's amended complaint, (Docket Entry No. 29), is denied as moot. TTD's motion to compel discovery, (Docket Entry No. 30), is denied as moot.

A hearing is set for January 17, 2025, at 1:00 p.m. by Zoom. A Zoom link will be separately sent.

SIGNED on January 3, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge